UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

DOUGLAS SMITH,

    Plaintiff,

v.

POWER HOME REMODELING
GROUP, LLC,

A Delaware limited liability company,

    Defendant.

_____/

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT

1. This action arises from defendant, Power Home Remodeling Group, LLC's ("Defendant") violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), and the Florida Telephone Solicitation Act, § 501.059, Fla. Stat. ("FTSA"). Plaintiff, Douglas Smith ("Plaintiff"), alleges that Defendant unlawfully placed calls to his cellular telephone despite his numerous requests for the calls to stop, in an attempt to market its home improvement services. Specifically, Defendant placed thousands of such calls to Plaintiff over the last two and a half years.

## NATURE OF THIS ACTION

2. This action is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq.*, and its enabling regulations 47 C.F.R. §64.1200, *et*

*seq.*

3.　　To market its services, Defendant engaged in unauthorized solicitation calls to Plaintiff in an effort to recruit Plaintiff as a client.

4.　　Plaintiff brings this action for relief under the TCPA and FTSA after receiving thousands of solicitation calls from Defendant on his personal cellular telephone.

5.　　Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, waste of time, and disruption of the Plaintiff's daily life. Plaintiff also seeks statutory damages as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## JURISDICTION AND VENUE

6.　　This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, a federal law. This Court has supplemental jurisdiction over the FTSA claim because it arises from the same calls as the TCPA claims and therefore the facts that form the basis of FTSA claim are part of the same transaction or occurrence.

7.　　This Court has personal jurisdiction over Defendant and venue in this district is proper under 28 U.S.C. § 1391 because Defendant directs, markets, and provides its business activities to this district and the events giving rise to the claims alleged herein occurred in this district.

## PARTIES

8.     Plaintiff is a natural person residing in Charlotte County, Florida.

9.     Defendant is a Delaware limited liability company that makes telephonic solicitation calls into the State of Florida, whose registered agent for service in the state of Florida is Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301-2525.

10.    Defendant regularly engages in interstate commerce, including within the State of Florida, by engaging in a business the principal purpose of which is providing home improvement services to consumers.

## FACTUAL ALLEGATIONS

11.    This action stems from the telephonic solicitation efforts of Defendant spanning a period of approximately two and a half years. During this time, Defendant placed in excess of one thousand (1,000) calls to Plaintiff's cellular telephone in an attempt to market or sell its home improvement services, despite having been repeatedly told by Plaintiff to cease such calls.

12.    Plaintiff is not currently, and was not previously, seeking to obtain home improvement services from Defendant or any other party.

13.    The calls at issue began in approximately November 2023, and continue to this day.

14.    Defendant's calls constitute telemarketing, solicitation, and sales calls because they encouraged Plaintiff to engage the services of Defendant.

15.    Defendant's calls were placed for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

16.    At all times herein, Plaintiff was the subscriber and user of a cellular telephone service for the number (xxx) xxx-0265.

17.    At all times herein, Plaintiff was the account holder of, and exercised dominion and control over, the cellular telephone and associated telephone number to which the Defendant was calling.

18.    The calls at issue were made using various "spoofed"[1] telephone numbers that were not capable of receiving incoming calls and/or were not assigned to Defendant or any agents acting on its behalf. The calls also did not display the name or identity of the caller.

19.    Plaintiff confirmed the numbers were spoofed by—on at least ten occasions—attempting to call back the various telephone numbers displayed on his cellular phone in connection with those calls, but in each instance was unable to complete the call or otherwise establish a connection.

20.    The calls at issue each fit a similar profile in that they were made using telephone numbers that purportedly had the same area code as Plaintiff's cellular telephone number.

---

[1] Source: FCC, Caller ID Spoofing, https://www.fcc.gov/spoofing (last viewed: June 8, 2026) ("Spoofing is when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity. Scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number . . . .").

21.    This fact further demonstrates that the calls at issue were made by or on behalf of Defendant, because Plaintiff does not currently reside in, and has not for the past several years previously resided in, the geographic location associated with the area code of his cellular telephone number, and thus does not regularly receive legitimate calls from that area code other than a small number of calls from telephone numbers that are known to him.

22.    On several occasions Plaintiff would answer one of the calls made by Defendant and displaying a spoofed telephone number with the same area code as his cellular telephone number, and on each occasion was played a prerecorded message offering home improvement services, but not disclosing the name of the company associated with the calls or the offered home improvement services.

23.    Plaintiff expressly told Defendant to stop calling him on multiple occasions, as early as November 2023, and as recently as April 2026.

24.    Over the course of the last two and a half years, Plaintiff has instructed Defendant to stop calling him on at least six (6) separate occasions, by answering a call from Defendant and telling a live agent on the call that he does not want to be called again.

25.    Despite those express and repeated instructions spanning the course of multiple years, Defendant continues to place its unwanted calls to Plaintiff on a daily basis, often multiple times per day.

26.    Plaintiff recently confirmed that the unlawful calls are being placed by Defendant when he answered several of the calls, and after being transferred to a call

center, asked the agent to send him information from the company whose services were being offered.

27.   Upon each such request, Plaintiff received a marketing email bearing Defendant's name, web address, and contact information.

28.   More specifically, on both May 8, and 12, 2026, Defendant, consistent with its usual practice, called Plaintiff multiple times from various spoofed telephone numbers with area codes mirroring that of Plaintiff's cellular telephone number. Plaintiff answered one such call on each of the above-referenced days, and subsequent to being played an identical prerecorded message, was transferred to a call center. In each instance, the live agent at the call center confirmed the call pertained to the solicitation of home improvement services, but declined to identify the company on whose behalf the calls were placed. However, upon prompting from Plaintiff, the live agent agreed to provide Plaintiff via email with materials pertaining to the services being offered.  Again, in each instance, Plaintiff provided his email address for the purpose of unmasking the identity of the caller, and thereafter received an email to the address provided to the call center agent which specifically identified Defendant as the sender, and disclosed Defendant's contact information and web address.

29.   Prior to providing the call center agent with his email address, Plaintiff had never received any email communications from Defendant, further demonstrating that the calls at issue were made by or on behalf of Defendant.

30.    Additionally, subsequent to being provided the email marketing materials from Defendant, the volume of unwanted calls increased by approximately two calls per day, further demonstrating that the calls were made by or on behalf of Defendant, as the increased volume of calls was attributable to Defendant's belief that Plaintiff was considering purchasing its services given his recent request for additional information.

31.    Defendant's use of spoofed telephone numbers to transmit unwanted sales calls and its failure to honor opt-out requests is not unique to Plaintiff. In February 2025, user "Pat M." posted a review on the website Yelp.com, complaining that despite not being interested in obtaining home improvement services, he receives "around 7 calls a day all from spoofed numbers" notwithstanding his attempts to opt out of such calls.[2] And similar to the calls at issue here, the user goes on to state that he was not able to determine the source of the calls until he feigned interest in obtaining Defendant's services, which in turn resulted in Defendant disclosing its actual identity.[3] Defendant was no doubt aware of the alleged use of spoofed telephone numbers and failure to honor opt-out requests, as Defendant or someone acting on its behalf responded to the review in question.[4]

32.    Defendant was also accused of using spoofed telephone numbers to place illegal telemarketing calls in the case styled *Aguilar v. Power Home Remodeling*

---

[2]    Source:    https://www.yelp.com/biz/power-home-remodeling-centennial?start=20&sort_by=rating_asc (last viewed: June 8, 2026).

[3] *Id*.

[4] *Id*.

*Group LLC*, No. 4:25-cv-02120 (S.D. Tex. 2025). In that case, the plaintiff alleged that Defendant called him using a spoofed number "not formally associated with any Power Home location" and that it did so to "make it appear that such calls are being made locally . . . ." And as Plaintiff alleges here, the plaintiff in *Aguilar* alleged that on answered calls, Defendant would vaguely reference "home improvement services" but would otherwise avoid identifying itself in order escape liability and accountability for its unlawful calls.

**TCPA Internal Do Not Call Violations**

33. As demonstrated by the above facts, Defendant does not honor reasonable consumer requests to opt-out of telephonic solicitations and systematically fails to maintain any functional internal do-not-call procedures.

34. Defendant's refusal to honor opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive calls from Defendant.

35. Defendant's refusal to honor opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

36. Defendant failed to place Plaintiff on an internal do-not-call list after his express opt-out instructions.

37. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the calls it made to Plaintiff as demonstrated by the fact that Plaintiff made numerous opt-out requests, yet his

8

requests were ignored by Defendant and its employees and Defendant continues to call Plaintiff to this day.

38.     Based on the foregoing, Defendant has failed to ensure that requests by consumers including Plaintiff to opt-out of future communications are honored within a reasonable time.

39.     Upon information and belief, Defendant does not have a written policy for maintaining an internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(1).

40.     Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do-not-call list pursuant to 47 C.F.R. § 64.1200(d)(2).

41.     The calls constitute telephone solicitations within the meaning of the TCPA because they were initiated for the purpose of encouraging the purchase of Defendant's goods and services.

42.     The calls received by Plaintiff were part of a telemarketing campaign conducted by or on behalf of Defendant to promote its home improvement services to consumers.

43.     Defendant's telemarketing campaign was designed to generate leads and drive sales for its home improvement services business.

44.     Accordingly, the calls made to Plaintiff were made for the purpose of encouraging the purchase of goods or services and constitute telemarketing within the meaning of the TCPA.

45.     Further, the calls expressly state that they pertain to the provision of home improvement services.

**Violations of The Florida Telephone Solicitations Act**

46.     It is a violation of the FTSA to "initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission . . . Made by or on behalf of the seller whose goods or services are being offered . . . ." Fla. Stat. § 501.059(5)(a).

47.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

48.     Plaintiff has never had, and does not have, any business or other relationship with Defendant.

49.     Despite the lack of any connection to, or relationship with Plaintiff, and despite being repeatedly instructed by Plaintiff to cease any further calls to him, Defendant persisted in calling Plaintiff more than one thousand (1,000) times during the relevant time frame in an effort to market its home improvement services.

10

50.    Plaintiff never provided prior express consent for the calls at issue, thus the calls were made without Plaintiff's prior express consent.

51.    Defendant knew or should have known that Plaintiff requested to not receive further telephonic sales calls from Defendant.

52.    Defendant intentionally and of its own volition failed to honor Plaintiff's demands to not receive any further calls from Defendant, by continuing to place calls to Plaintiff after multiple demands for Defendant to stop such calls.

53.    Defendant engages in a pattern and practice of placing telephonic sales calls to cellular telephones despite being instructed to stop.

54.    Defendant has placed thousands of telephonic sales calls to consumers other than Plaintiff, who have requested Defendant to stop such calls.

**Defendant's Knowledge of its Violations**

55.    Defendant was aware of the TCPA and the conduct it prohibits, with such knowledge having been acquired in multiple ways, including by being sued in numerous lawsuits for alleged violations of the TCPA, including for failing to maintain an internal company-specific do-not-call list—one of the claims at issue in the instant lawsuit.

56.    More specifically, in 2015, Defendant was sued in the case styled *Vasco v. Power Home Remodeling Group LLC*, No. CV 15-4623 (E.D. Pa. 2015), wherein the plaintiff alleged Defendant made telemarketing calls to the plaintiff and class members in violation of the TCPA. Defendant ultimately paid $5.2 million to resolve that case on a class-wide basis. Thereafter, in 2019, in the case styled *Reinert v. Power*

11

*Home Remodeling Group, LLC*, No. 19-13186 (E.D. Mich. 2019), Defendant was again accused of violating the TCPA, including the requirement to maintain an internal company-specific do-not-call list, one of the claims at issue in this lawsuit. The next year, in 2020, Defendant was again sued for violating the TCPA in the case styled *Hruska v. Power Home Remodeling Group, LLC*, No. 1:20-cv-01143 (N.D. Ill. 2020). And as recently as 2025 in the case styled *Massarello v. Power Home Remodeling Group, LLC*, No. 24-cv-12480 (E.D. Mich. 2024), Defendant was yet again accused of violating the TCPA. Moreover, as alleged *supra*, in 2025 in the *Aguilar* matter, Defendant was accused of violating the TCPA by failing to maintain an internal company-specific do-not-call list while—similar to the allegations in the instant suit—using spoofed telephone numbers with the same area code as the called party in the hopes of increasing the likelihood its unlawful sales calls will be answered, while avoiding detection and accountability for those calls.

57.  Despite the numerous ways Defendant was repeatedly informed that the calls of the nature alleged herein were in violation of the law—and its documented knowledge of same—Defendant has remained undeterred and continues its violations to this day, thus necessitating the filing of the instant lawsuit.

58.  The volume and type of calls made by Defendant were intentional and, as reasonably expected, caused Plaintiff significant frustration and annoyance. Accordingly, Plaintiff has suffered actual damages as a result of Defendant's unlawful communications in the form of anger, anxiety, frustration, the occupation

12

of Plaintiff's cellular telephone line, intrusion upon seclusion, and further has suffered an unjustified and abusive invasion of Plaintiff's personal privacy.

59.     Defendant's deliberate attempts to obfuscate its identity and the origin of the calls it places, further demonstrates its knowledge that the telephonic sales calls it places to consumers including Plaintiff are unlawful.

60.     Plaintiff was entitled to be free of intrusive and harassing communications concerning home improvement services, and was needlessly forced to expend time addressing the calls.

61.     Defendant's conduct is ongoing and poses a real and immediate threat of future harm.

62.     Plaintiff believes and reasonably fears that the unlawful calls alleged herein will continue absent judicial relief.

## COUNT I
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – INTERNAL DO NOT CALL LIST

63.     Plaintiff incorporates and re-alleges paragraphs 1 through 45 and 55 through 62 as though fully set forth herein.

64.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

1.     Written policy. Persons or entities making . . . calls for telemarketing     purposes     must have a     written     policy, available upon demand, for maintaining a do-not-call list.

13

2.      Training of personnel. Personnel engaged in . . . any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

3.      Recording, disclosure of do-not-call requests. If a person or entity making . . . any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making . . . any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.

*       *       *

(6) Maintenance of do-not-call lists. A person or entity making . . . any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

65.     Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

66.     For violations of this provision, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-

14

month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

67. The TCPA's implementing regulations require entities that make telephone solicitations to maintain a company-specific "do-not-call" list of persons who have requested not to receive such calls. 47 C.F.R. § 64.1200(d).

68. Plaintiff has repeatedly instructed Defendant to cease the calls at issue, as set forth in the preceding allegations.

69. Despite Plaintiff's express instructions, Defendant continued to place thousands of telemarketing calls to Plaintiff's cellular telephone, including to this day.

70. Defendant failed to maintain and honor an internal do-not-call list as required by 47 C.F.R. § 64.1200(d).

71. Defendant's violations were negligent, willful, or knowing.

72. As a result of Defendant's violations of the TCPA, 47 U.S.C. § 227, and 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an award of up to $500 in damages for each and every call made in negligent violation of the TCPA, and up to $1,500 in damages for each call found to be willful.

73. Plaintiff is also entitled to, and does seek injunctive relief prohibiting Defendant from making further telemarketing calls to him.

15

**COUNT II**
**VIOLATION OF THE TELEPHONE CONSUMER**
**PROTECTION ACT – FAILURE TO TRANSMIT CALLER**
**IDENTIFICATION INFORMATION**

74.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 and 55 through 62 as though fully set forth herein.

75.    In pertinent part, 47 C.F.R. § 64.1601 provides:

(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.

(1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.
(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information.

76.    As outlined in detail above, Defendant has violated the requirements of section 64.1601(e) by failing to transmit the caller identification information when placing telemarketing calls. Defendant failed to show the telemarketer's name and hid the caller's ID by "spoofing" the number placing the call.

77.    Pursuant to section 227(c)(5) of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call placed by Defendant, and up to $1,500.00 in statutory damages for each willful call placed by Defendant.

16

## COUNT III
## VIOLATION OF THE
## FLORIDA TELEPHONE SOLICITATION ACT

78.    Plaintiff incorporates and re-alleges paragraphs 1 through 32 and 46 through 62 as though fully set forth herein.

79.    In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff despite numerous demands by Plaintiff for the calls to cease.

80.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each of Defendant's violations. Plaintiff is also entitled to, and does seek, an injunction against future calls. *Id*.

WHEREFORE, Plaintiff, Douglas Smith, requests that this Court enter judgment in favor of Plaintiff and against Defendant, Power Home Remodeling Group, LLC, for:

a) $500 in statutory damages for each violation of the TCPA held not to be a knowing or willful violation;

b) $1500 in statutory damages for each violation of the TCPA held to be a knowing or willful violation;

c) $500 in statutory damages for each violation of the FTSA held not to be a knowing or willful violation;

d) $1500 in statutory damages for each violation of the FTSA held to be a knowing or willful violation,

e) A permanent injunction prohibiting Defendant from placing non-emergency calls to Plaintiff's cellular telephone;

f) A declaratory judgment that Defendant has violated Plaintiff's rights under the TCPA and FTSA;

g) To the extent provided by law, attorneys' fees, litigation expenses, and costs of this action, and;

h) Such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues so triable.

Dated: June 8, 2026

Respectfully submitted,

s/ Scott D. Owens
Scott D. Owens, Esq.
Scott D. Owens, P.A.
2750 N. 29th Ave., Suite 209A
Hollywood, FL 33020
Tel: 954-589-0588
Fax: 954-337-0666
Email: scott@scottdowens.com

*Counsel for Plaintiff*